**Arnold B. ELKIND, Plaintiff,**

v.

**LIGGETT & MYERS, INC., et al., Defendants.**

Civ. No. 2837 (JMC).

United States District Court, S. D. New York.

Feb. 10, 1975.

Robert N. Kaplan, New York City
(Kaplan, Kilsheimer & Foley, New York
City, of counsel), for plaintiff.

Herbert M. Wachtell, William C. Sterling, Jr., Steven M. Barna, New York City (Wachtell, Lipton, Rosen & Katz, New York City, of counsel), for defendants Neuberger & Berman, Marvin C. Schwartz and Lawrence Marx.

Donald J. Cohn, C. Kenneth Shank, Jr., J. Dinsmore Adams, Jr., New York City (Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, of counsel), for defendants Liggett & Myers Incorporated, and others.

## MEMORANDUM DECISION

CANNELLA, District Judge:

### INTRODUCTION

In this action alleging violations by twenty-two named defendants of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b–5 (17 C.F.R. § 240.10b–5) promulgated thereunder, the plaintiff (Arnold Elkind) moves for a determination that this case proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Court, treating the motion as one made against each defendant individually, finds that as to defendant Liggett & Myers, Incorporated ("L&M") the requirements of Rule 23 have been met and as discussed below class action status is warranted. As to the other named defendants, however, insufficient facts have been pleaded or presented by way of affidavit to permit such a finding, and plaintiff's motion in this respect is therefore denied without prejudice to renewal within thirty days.

### THE CLAIMS

In his complaint plaintiff pleads two causes of action. The first alleges that defendant Liggett & Myers, Incorporated, a publicly owned corporation whose shares are traded on the New York Stock Exchange, and certain of L&M's officers and directors violated Rule 10b–5 as a result of their failure, beginning on or about June 17, 1972, to publicly disclose substantial declines in L&M's earnings.

Plaintiff alleges, that beginning in February of 1972 "L&M executives commenced a series of meetings with various securities analysts during which L&M's all time high 1971 net earnings were discussed, and statements were made that L&M was optimistic about the future progress of its businesses." (Amended Complaint at 6 ¶ 16c.) It is further alleged that in March, April and May of 1972, L&M issued press releases and a report to shareholders detailing the advances of 1971 and early 1972. In light of these actions and public statements, it is urged that L&M, upon learning in May and June of 1972 that net earnings for April and May were substantially lower than those reported in the comparable periods of 1971, "knew or should have known, at least as early as June 17, 1972, that its earnings during the foreseeable future would be declining," (Amended Complaint at 8 ¶ 20) and, therefore, had a duty to so state in a public disclosure. Having failed to do so it is contended that they violated Rule 10b–5 in that said information would have been material to prospective purchasers of L&M stock.

For a second cause of action, plaintiff alleges that beginning sometime near the end of June 1972 certain defendants "tipped" selected brokers by disclosing to them non-public information regarding the decline in April and May earnings as well as their expectation that 1972's second quarter earnings would prove to be similarly unfavorable. The complaint specifically alleges that this non-public information was tipped to defendant Paine, Webber, Jackson & Curtis, Inc. ("Paine, Webber") in a series of meetings and telephone calls occurring on June 28, July 11, 12, 17 and 18 of 1972, and that said information was tipped to defendant Neuberger & Berman on or about July 10, 1972. It is further alleged that defendant tippees, Paine, Webber, and Neuberger & Berman, relying on the tipped information, traded L&M stock prior to L&M's public

disclosure on July 18, 1972 of the adverse financial information.

## THE CLASS ACTION MOTION

### A. *Defining the Classes*

 Plaintiff defines the class he seeks to represent as all persons who purchased L&M stock on the open market between June 19, 1972 and July 18, 1972. For the reasons which follow, the Court rejects this suggested class and instead conditionally denominates (subject to alteration pursuant to 23(c)(1)) two separate and distinct classes. The first class (Class I) is comprised of all individuals who purchased L&M stock between June 17, 1972, the date upon which it is alleged that L&M's duty to disclose first existed, and sometime on July 12, 1972, the date upon which plaintiff Elkind purchased his L&M shares. Class II, which arises out of the allegations in the second cause of action, consists of all purchasers (with the exception of the defendants) of L&M stock between June 28, 1972, the date upon which the first tip is alleged to have occurred, and sometime on July 12, 1972, the date upon which Elkind purchased his L&M shares.

 As there are numerous defendants in Class II it is necessary to define the class of plaintiffs to whom each defendant may prove liable. *See* Aboudi v. Daroff, 65 F.R.D. 388 at 394 (S.D. N.Y.1974). As to defendant L&M, a non-trading "tipper," the plaintiff class will consist of all individuals who purchased L&M stock between June 28, 1972 (the date of the first alleged tip) and some time on July 12, 1972. As to defendants Paine, Webber and Neuberger & Berman, the facts pleaded do not provide the Court with sufficient information upon which to define the plaintiff class. As to these two defendants, liability as trading "tippees" would arise at the time they first traded L&M stock on the basis of the non-public information and thereby violated their duty to disclose or abstain. Neither the amended complaint nor the affidavits submitted in support of this motion provide such information and the Court is thus unable to estimate the size of the class or define its contours. Therefore, as to Paine, Webber and Neuberger & Berman, the motion for a class action determination is denied with leave to renew within thirty days. As to the remaining defendants, some of whom are apparently alleged tippers while others are alleged tippees, plaintiff has supplied the Court with no facts upon which to base a class action decision, and, plaintiff's motion as to them is therefore denied with leave to renew within thirty days.

### B. *The Requirements of Rule 23*

In order to warrant treatment as a 23(b)(3) class action, plaintiff must satisfy the court that (1) joinder is impracticable due to the numerosity of the class; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative are typical; (4) the representative party will fairly and adequately protect the interests of the class; (5) the common questions predominate; and (6) a class action is the superior method of conducting the lawsuit.

### 23(a)(1) NUMEROSITY

 The cases are clear that a class will be deemed sufficiently numerous to make joinder impracticable when it is made up of as few as forty stockholders. *See* Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972) (class of seventy), citing with approval, Swanson v. American Consumer Industries, Inc., 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (class of forty). In the instant case, Class I which apparently includes four to five hundred members (see Supplemental Affidavit of Robert Kaplan dated September 27, 1974) clearly satisfies the numerosity requirement. As to that subclass of Class II in which L&M is the sole defendant, although the facts pres-

ently before the Court do not indicate the precise number of individuals who purchased L&M stock during the Class II period (June 28, 1972—July 12, 1972), the Kaplan Affidavit referred to above read together with Exhibit B to the Kaplan Affidavit of August 20, 1974 clearly indicate that the numerosity requirement has been satisfied. *See* Brandt v. Owens-Illinois, Inc., 62 F.R.D. 160, 164 (S.D.N.Y.1973); Hawk Industries, Inc. v. Bausch & Lomb, Inc., 59 F.R.D. 619, 623 (S.D.N.Y.1973); Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y. 1966).

23(a)(2) COMMONALITY and 23(b) PREDOMINANCE

The consideration of the question of commonality will be subsumed within the discussion of the predominance of common questions required by 23(b)(3) as a finding of predominance of necessity satisfies the lesser (a)(2) requirement of commonality.

■ Defendant L&M argues that there is a lack of predominance and commonality as to the nondisclosure claim pleaded in the first cause of action. It is urged that the cases of Cannon v. Texas Gulf Sulphur Co., 55 F.R.D. 306 (S.D.N.Y.1971) and Robinson v. Penn Central Co., 58 F.R.D. 436 (S.D.N.Y.1973) stand for the proposition that common questions of law and fact do not predominate in a 10b–5 nondisclosure case. This argument, however, is premised upon a faulty conception of the present state of the 10b–5 case law. To prevail on its nondisclosure claim, plaintiffs will have to establish that there devolved upon L&M a legal duty to disclose its April and/or May earnings, and that such information would have been material to a potential purchaser of L&M shares. There will be no need, however, for plaintiff to prove that each purchaser relied upon said omission in order to satisfy the requisite element of causation in fact. If this proposition was not clear after

Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) and Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 375 (2d Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973), the Second Circuit's recent decisions in Herbst v. ITT, 495 F.2d 1308, 1316 (2d Cir. 1974), Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d 228, 239–40 (2d Cir. 1974) and Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374 at 381 (2d Cir. 1974), establish it beyond peradventure. *See also,* Note, The Reliance Requirement in Private Actions Under SEC Rule 10b–5, 88 Harv.L.Rev. 584, 590–92 (1975). To the extent that recent decisions require the rejection of the holding in Cannon v. Texas Gulf Sulphur Co., 55 F.R.D. 306 (S.D.N.Y.1971) that a nondisclosure case is not amenable to class treatment in that individual proof of causation is necessary, this Court so holds.

As to Robinson v. Penn Central Co., 58 F.R.D. 436 (S.D.N.Y.1973), the court there denied the class motion "without prejudice to renewal" (*id.* at 444) on the grounds that plaintiff's theory of liability remained to be clarified and that it was unclear whether defendants' liability arose out of a single event or whether "[b]ecause of the numerous and diverse events that had the potential of affecting each defendant's decision to sell, the danger exists that liability will have to be separately established." (*Id.*) By way of contrast, the theory of the instant case is that in light of its prior actions L&M had a duty under 10b–5 to disclose its earnings figures. If plaintiff can successfully support such a principle and establish the date after which failure to disclose became actionable under 10b–5, then all purchasers after that date will apparently be similarly situated as to their claim against L&M.

It is thus clear that questions of law (whether L&M had a duty to disclose and whether the earnings figures were material) and a question of fact (at which date did such a duty arise) are common to all members of the class and predominate over questions affecting each individual member. *See* Stull v. Baker, [1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,227 at 94,928 (S.D. N.Y.1973) (finding predominance in a similar nondisclosure case); Slade v. Shearson, Hamill & Co., Inc., [1973–74 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,329 at 95,132–33 (S.D.N.Y.1974) (granting class status in a nondisclosure case).

 As to Class II, L&M argues that while the legal theory (illegal tipping) of each claim will be similar, "the facts which must be proven to establish a right to relief differ for each potential class member." (Memorandum in Opposition at 17). This assertion is patently incorrect. As an alleged tipper, L&M's liability arises upon a showing that as an insider it selectively disclosed non-public material information (thus violating its duty either to disclose such information to the public-at-large or withhold it from everyone), and continues until the violation has been "cured" by effective public disclosure. Thus the allegation of illegal tipping satisfies the 10b–5 causation in fact requirement as to all plaintiffs who between the time of the tip and the time of public disclosure "would not have purchased [L&M] stock if they had known of the information withheld by defendants." Shapiro v. Merrill Lynch, 495 F.2d at 240. Therefore the Court finds that there is a predominating question of law (was there an illegal tip?) and two predominating questions of fact (at what date was the tip made? and at what date did effective public disclosure occur?) common to all members of Class II. *See* Hawk Industries, Inc. v. Bausch & Lomb, Inc., 59 F.R.D. 619, 623 (S.D. N.Y.1973).

23(a)(3) TYPICALITY

Although the requirement that the claims or defenses of the representative parties be typical of the claims or defenses of the class is often found to overlap with the requirements of commonality and adequacy of representation,

> it may have independent significance if it is used to screen-out class actions where the legal or factual position of the representative is markedly different from that of other members of the class even though common issues of law or fact are raised.

7 C. Wright & A. Miller, Federal Practice and Procedure, § 1764 at 614 (1972). *See also*, Note, Class Actions: Defining the Typical and Representative Plaintiff Under Subsections (a)(3) and (4) of Federal Rule 23, 53 B.U.L.Rev. 406 (1973).

██ Defendant L&M, relying upon Judge Lasker's decision in Robinson v. Penn Central, 58 F.R.D. 436, 442–43 (S.D.N.Y.1973), argues that plaintiff Elkind is typical *only* of those persons who purchased L&M shares on July 12, 1972 (his purchase date). *Robinson*, however, was a case in which there were numerous alleged misrepresentations and omissions occurring over a period of a month, and where plaintiff had failed to set forth his theory of the case or allege facts which would "establish that any common predicate of liability exists." 58 F.R.D. at 444 (footnote omitted). In the instant matter, on the other hand, the date upon which L&M's duty to disclose arose is the common predicate of liability. *Compare* Feldman v. Lifton, 64 F. R.D. 539 at 544 (S.D.N.Y.1974). This does not mean, however, that Elkind is typical of all those who purchased L&M shares between June 17, 1972 and July 18, 1972. Rather, he is typical only of those who made their purchases before he did. This follows from the fact that in a nondisclosure case the plaintiff must prove that the duty to disclose arose prior to his purchase in order to recover.

If the duty arose subsequent to his purchase, then he would not have been damaged by the nondisclosure and could not recover on that claim. Thus, "he has no real interest" in proving that the duty arose subsequent to his purchase date. Stull v. Baker, [1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,227 at 94,928. Elkind's claim, then, is typical of those who purchased L&M shares between June 17, 1972 and that time on July 12, 1972 at which Elkind's purchase occurred.

As to Class II, plaintiff's claim is typical of all who purchased L&M stock between the time L&M selectively disclosed inside information and the time Elkind purchased his stock. The tipper's liability, like that of the tippee, begins at the time 10b–5 is violated (by tipping for a tipper, by trading for a tippee) and continues until the non-public material information which is passed or acted upon is effectively publicly disseminated. Thus, Elkind is in the same legal position as all others who purchased L&M stock after the illegal tip. Factually, however, Elkind is not typical of those who acquired their L&M shares after he did. Here, as in Class I, Elkind must prove that the 10b–5 violations occurred prior to his purchase and therefore he has no incentive to adduce evidence as to events occurring after July 12. This lack of typicality makes Elkind an inadequate representative of all who purchased their shares after Elkind.

## 23(a)(4) ADEQUATE REPRESENTATION

■ Having defined the classes as discussed above, the Court finds that Elkind's interests are not antagonistic to any members of Class I. As to Class II, Elkind's interests are antagonistic to those named defendants who qualify for inclusion in Class II and such defendants are therefore excluded from Class II.

Finally, it is clear, that plaintiff's counsel possess the requisite competence both in terms of experience and diligence to adequately protect the interests of the class. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968). See also, Sweet v. Bermingham, 65 F.R.D. 551 (S.D.N.Y.1975).

## 23(b) SUPERIORITY

■ The last hurdle to class action certification is a finding that treating this case as a class action is superior to any other method of proceeding. In that there are numerous plaintiffs with essentially small claims based upon predominating common questions of law and fact, as well as an apparent absence of any manageability problems, the Court finds that this case can most effectively be conducted within the procedural framework provided by Rule 23. See Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1019 (2d Cir. 1973), aff'd, 417 U. S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

## CONCLUSION

It is therefore ordered that this case proceed as a class action against defendant L&M as discussed above. As to all other defendants, the Court denies plaintiff's class action motion without prejudice to renewal within thirty days.

So ordered.