**Arnold B. ELKIND, etc., Plaintiff,**

v.

**LIGGETT & MYERS, INCORPORATED, Defendant.**

No. 73 Civ. 2837.

United States District Court, S. D. New York.

Dec. 14, 1977.

Kaplan, Kilsheimer & Foley by Robert N. Kaplan, Dale A. Schreiber, James Kilsheimer, III, New York City, for plaintiff.

Webster & Sheffield by Donald J. Cohn, Marsha E. Novick, Nancy E. Friedman, Paul E. Gangse, New York City, for Liggett & Myers, Inc.

## MEMORANDUM OPINION

MOTLEY, District Judge.

*Background*

This is a class action on behalf of certain shareholders of Liggett & Myers Incorporated (L & M) claiming that the named defendants have "engaged in acts, practices and courses of conduct which constitute a violation of Section 10(b) of the Securities Exchange Act of 1934 . . . (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. 240.10b–5) promulgated thereunder." (Amended Complaint ¶ 1) Since the filing of the Amended Complaint, this action has been discontinued as to all defendants except L & M. A bench trial was held between December 28, 1976 and January 10, 1977. The court has reserved decision on the merits. On the first day of trial plaintiff moved to expand the classes certified by

Judge Cannella[1] on February 10, 1976. *Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36 (S.D.N.Y.1975). The motion to expand the classes is granted.

Judge Cannella's decision may be briefly summarized. Plaintiff asked that a single class of all those who purchased L & M stock between June 19 and July 18, 1972 be certified to encompass both counts of the complaint. Instead, Judge Cannella certified a separate class for each of the two counts in the complaint.[2] Count One alleges that L & M and its directors had a duty to notify the public of a sudden nosedive in its profits after it had set profit records for the year 1971 and the first quarter of 1972. While this duty allegedly arose on June 19, 1972, the public announcement of the poor second quarter earnings was not made until July 18, 1972. Plaintiff asked that the class consist of those persons who had purchased L & M stock anytime between June 19 and July 18, 1972. Judge Cannella certified as a class (Class I) those who had purchased L & M stock between June 19[3] and "sometime on July 12, 1972, the date upon which plaintiff Elkind purchased his L & M shares." 66 F.R.D. at 39.

Count Two alleges that L & M through certain of its directors and employees leaked information regarding its poor second quarter earnings to certain brokers before this information was released to the public on July 18, 1972. As to this count of illegal "tipping", Judge Cannella certified Class II which consists of "all purchasers (with the exception of the defendants) of L & M stock between June 28, 1972, the date upon which the first tip is alleged to have occurred, and sometime on July 12, 1972, the date upon which Elkind purchased his L & M shares." 66 F.R.D. at 39.

The instant motion arises from plaintiff's disagreement with Judge Cannella's July 12 cutoff date in both classes. Plaintiff contends that both classes should include all those who purchased L & M stock through July 18. Judge Cannella's rationale for the July 12 date is as follows:

" . . . Elkind is [not] typical of all those who purchased L & M shares between June 17, 1972 and July 18, 1972. Rather, he is typical only of those who made their purchases before he did. This follows from the fact that in a non-disclosure case the plaintiff must prove that the duty to disclose arose prior to his purchase in order to recover. If the duty arose subsequent to his purchase, then he would not have been damaged by the nondisclosure and could not recover on that claim. Thus, 'he has no real interest' in proving that the duty arose subsequent to his purchase date." 66 F.R.D. at 41–42.

Judge Cannella set July 12 as the cutoff date for Count Two, the tipping count, using the same rationale. 66 F.R.D. at 42.

Plaintiff now claims that based on factual developments subsequent to Judge Cannella's opinion—which demonstrates that plaintiff has been diligent in uncovering any facts which would prove that a duty of disclosure arose subsequent to July 12, and that based on subsequent legal developments (which purportedly liberalize the scope of the class in situations of this type) the court should reconsider the scope of Classes I and II and extend them to include those persons who purchased L & M shares between July 12 and July 18, 1972.

*Discussion*

 Preliminary, it should be noted that it is appropriate to reconsider the scope of the classes at this stage of the proceedings. In his decision, Judge Cannella expressly noted that the classes denominated were

---

1. This action was originally assigned to Judge Cannella and transferred to Judge Motley for the purposes of trial.

2. The class actions were certified only as to the defendant L & M.

3. The opinion actually reads June 17, but plaintiff originally requested that the class begin on June 19 and now takes the position that the latter date is correct.

"subject to alteration pursuant to [Rule] 23(c)(1)".[4] 66 F.R.D. at 39.

Furthermore, the pretrial order signed by Judge Cannella and filed on September 30, 1976, lists as one of plaintiff's proposed issues to be tried the following: "Should the class represented by plaintiff be enlarged to include those persons who purchased L & M securities on the open market at any time between July 12, 1972 and July 18, 1972?"[5] Finally, the cases clearly indicate that classes can be altered based on facts which develop subsequent to the initial certification of the class. *In re Scientific Control Corporation Securities Litigation,* 71 F.R.D. 491, 503 n. 12 (S.D.N.Y. 1976); *Wolfson v. Solomon,* 64 F.R.D. 399, 401 (S.D.N.Y.1974); *Fischer v. Kletz,* 41 F.R.D. 377, 386 (S.D.N.Y.1966).

The essence of Judge Cannella's refusal to extend the classes beyond July 12, the date that plaintiff purchased his shares, was his concern that the plaintiff could not adequately represent those who bought L & M shares between July 12 and July 18, 1972. This court finds that based upon the facts as developed by the beginning of trial,[6] the plaintiff can adequately represent post-July 12 buyers with respect to both counts in the complaint.

In considering whether the named plaintiff can be an adequate representative of post-July 12 buyers, it is vital to step back and view plaintiff's case in perspective. His claim is that after experiencing record earnings in 1971, the financial community was understandably optimistic about the prospects of the company. L & M fueled this optimism by predicting strong future growth in 1972 and beyond. However, plaintiff claims that it should have become clear to L & M by June 19, 1972—or even before—that 1972 was going to be a bad year. The plaintiff contends that L & M had a duty to deflate the public's rising expectations when L & M's profit picture took a turn for the worse. Instead, the company refrained from delivering the bad news to the public. The company slowly leaked information to various members of the financial community so that the stock price would be eased down gently, rather than collapse as might occur if the unexpected bad news were to come as a complete surprise to everyone. The duty to disclose, according to plaintiff, arose sometime before July 18 (the day of the public announcement)—specifically on June 19 (the day the Board of Directors was notified of the poor earnings picture). The tips, according to plaintiff, continued up to July 18, becoming more frequent closer to that date.

In short, plaintiff alleges a *scheme* to withhold material information from the public while selectively disclosing that information to certain brokers. The overall scheme clearly lasted to July 18 based on the allegations of plaintiff, although the tipping aspect began on June 28 and the duty to disclose arose on June 19.

Based on the above summary of plaintiff's claim, plaintiff will certainly have a fairly strong incentive to develop all the facts pertinent to L & M's scheme up to and including July 18.

With respect to the disclosure count, plaintiff will endeavor to prove that the

---

4. Rule 23(c)(1), Fed.R.Civ.P. reads in pertinent part: "An order under this subdivision [certifying a class] may be conditional, and may be altered or amended before the decision on the merits." Defendant notes that most of the cases decided under Rule 23(c)(1) have altered the class by limiting its scope as new facts developed. Defendant then infers that it would be improper to expand the class under that section. Neither the express language of the rule nor the caselaw requires that the rule be read so narrowly. *See, e. g., Wolfson v. Solomon,* 64 F.R.D. 399 (S.D.N.Y.1974).

5. These facts are sufficient to dispose of defendant's contention that the motion to amend the classes is untimely and that defendant was surprised. Rule 23(c)(1); *Fischer v. Kletz,* 41 F.R.D. 377, 386 (S.D.N.Y.1966).

6. In response to defendant's claim that a class action cannot be altered after or during the decision on the merits, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the court notes that it has not yet considered the merits of this action. Nor has this decision been based on any evidence introduced at trial.

duty to disclose arose before plaintiff bought his shares on July 12. The defendants will endeavor to show that there never was a duty or that the duty arose after July 12, or after July 18 with respect to the new proposed class. The court is confident that the thrust and counter-thrust of the litigation will bring the relevant facts of the entire period to the surface. It is unlikely that a factual hiatus will envelop the time between July 12 and July 18. The court must decide whether and when, as a matter of law, L & M had a duty to disclose prior to July 18. Therefore, so long as the facts are developed at trial, post-July 12 shareholders are fully protected.

Any fear that plaintiff's incentive to develop post-July 12 facts would be lacking has been dispelled by plaintiff's discovery efforts subsequent to the certification of the original classes. Plaintiff has developed evidence that there was illegal tipping between July 12 and July 18. This evidence,[7] of course, goes directly to Count Two of the Amended Complaint, the tipping count, but it is also probative of the alleged general plan to defraud the public and of L & M's "intent" with respect to the alleged violation of Rule 10b–5 in failing to disclose material information. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)(scienter on part of defendant must be proved in civil damage action under Rule 10b–5).

Furthermore, at least one court has held that the glimmer of increased attorneys fees for the victorious plaintiff who represents a larger class is another incentive for the plaintiff to develop a full record of those events which occurred subsequent to his purchase. *In re Financial Securities Litigation,* 69 F.R.D. 24, 38 (S.D.Cal.1975).

It is likely that persons who bought L & M stock between July 12 and July 18 will more likely benefit than be prejudiced by the expansion of Class I. The only chance that they will be so prejudiced is if plaintiff fails to prove a duty to disclose and a post-July 12 duty actually did exist. Based on the court's finding that plaintiff has

sufficient incentives to develop post-July 12 evidence, this is an unlikely eventuality. If the class were not expanded, post-July 12 purchasers could conceivably bring a class action on behalf of the July 12—July 18 class. But it is somewhat unlikely, based on plaintiff's causes of action, that they would succeed where plaintiff failed. Rather it is highly likely that the claims of post-July 12 purchasers will stand or fall with those of plaintiff.

Expansion of the class at this stage would serve the interest of judicial economy. If the class is expanded, a possible future suit by post-July 12 purchasers would be precluded.

With respect to the tipping count of the complaint, plaintiff has a clear incentive to develop the full pattern of tipping up to July 18. In developing the tipping scheme as a whole, plaintiff would be likely to follow up post-July 12 tipping evidence to establish a clear picture of L & M's plan.

There is case law which may be considered to be contrary to today's holding.

Various cases have announced the general rule that a plaintiff who alleges that the defendant breached its duty to disclose cannot represent those who bought the stock after the plaintiff purchased his shares. *Stull v. Baker,* [1973 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 94,227, p. 94,924 (S.D.N.Y.1973); *Elkind, supra; Fruchthandler v. Blakely,* 73 F.R.D. 318, 321 (S.D.N.Y.1976); *Simon v. Westinghouse Electric Corporation,* 73 F.R.D. 480, 485 (E.D.Pa.1977). It is noteworthy that plaintiffs in those cases sought to represent persons who purchased shares from over one year after plaintiff's purchase (*Simon*) to over three years thereafter (*Stull*). In the instant case plaintiff seeks to represent those who bought shares for only six days (or four *trading* days) after plaintiff's purchase. In *Fruchthandler* significant events occurred after plaintiff's purchase such as to render his claims not typical of subsequent purchasers.

7. This evidence was subsequently admitted at trial over defendant's objection.

■ This court feels that while, as a general rule, a plaintiff should not represent subsequent purchasers in a non-disclosure case, the rule should bend before the factual imperatives of any given action. Judge Frankel agrees. *State Teachers Retirement Board v. Fluor Corporation,* 73 F.R.D. 569 (S.D.N.Y., decided December 2, 1976).

■ This case (especially the tipping count) is more akin to those which have allowed the plaintiff to represent those who purchased shares after he had on the ground that, in alleging a common course of conduct over a long period of time, the plaintiff would have sufficient incentive to duly develop facts which occurred after the individual plaintiff had purchased his shares. *Weiss v. Drew National Corporation,* 71 F.R.D. 429, 431 (S.D.N.Y.1976); *Clark v. Cameron-Brown Co.,* 72 F.R.D. 48, 59 (M.D.N.C.1976); *Aboudi v. Daroff,* 65 F.R.D. 388 (S.D.N.Y.1974); *Blackie v. Barrack,* 524 F.2d 891, 903–5 (9th Cir. 1975); *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

Most of defendant's objections to this motion have been dealt with in footnotes 4, 5 and 6 *supra.* In addition, defendant claims that the motion to expand the class is prejudicial to itself since it was unable to present a defense to the claims of the July 12—July 18 purchasers. However, the pre-trial order put defendant on notice that the issue would again be raised by the plaintiff. It was so raised, at the beginning of the trial. Defendant had approximately two weeks to prepare a defense to the claims of the post-July 12 purchasers. Of equal importance is the fact that, while claiming prejudice, defendant has not suggested how its defense would have been any different had the post-July 12 purchasers been in the case from the outset of the trial. Nor can the court imagine how the defense might have changed.

Submit order on notice.