Benjamin KOENIG, Plaintiff,

v.

Stephen S. SMITH, Frank Perloff, Sidney Horne, Daniel Schmeir, Milton Brown, Joseph Giordano, Sr., and Friendly Frost, Inc., Defendants.

No. 79 C 452.

United States District Court,
E. D. New York.

Dec. 3, 1980.

Stull, Stull & Brody, Robert A. Stull, New York City, for plaintiff.

Gilbert Wallach, New York City, for defendant Smith; Steven Rosen, New York City, of counsel.

Shea & Gould by Martin I. Shelton, Mark E. Klein, New York City, for defendants Perloff, Horne, Schmeir, Brown & Giordano.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff commenced this securities action on behalf of himself and other purchasers of common stock of defendant Friendly Frost Corporation ("Friendly") who bought between November 18, 1977 and January 29, 1979 (the "class period"), relying on the integrity of the market. He alleges that throughout the class period the price of Friendly shares traded on the American Stock Exchange ("AMEX") was inflated because the stock was being manipulated and none of the defendants disclosed this material fact to the public. Damages for the class are sought for these acts and omissions of defendants, which allegedly violated § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q; §§ 9(a)(2) and 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(a)(2), 78j(b); Rule 10b–5 of the Securities Exchange Commission ("SEC"), 17 C.F.R. § 240.10b–5; and the common law of New York. The action is before the court on plaintiff's motion to certify the class of purchasers described above.

*Background*

Prior to November 18, 1977, defendants Perloff, Horne, Schmeir, Brown and Giordano ("selling defendants") were all officers of Friendly and constituted a majority of its board of directors, controlling 34% of Friendly's shares, while a second block of about 32.3% was held by an outside corporation. Consequently the third of the shares remaining in public hands traded in what plaintiff has characterized as a "thin" market where Friendly's price was very sensitive to changes in trading volume.

By an agreement dated November 18, 1977 and announced to the public on November 21, the selling defendants sold defendant Smith most of their holdings, amounting to 29.4% of Friendly's stock, for $1,800,000, agreed to elect him chairman of the board of directors but retained an option to repurchase one-half the shares they sold at $6 per share. Allegedly the selling defendants knew Smith was experienced at promoting securities but could not pay even the first installment of the purchase price without a substantial increase in Friendly's market price. Plaintiff first purchased 500 shares of Friendly towards the end of the class period on August 24, 1978. He sold these shares on September 13 and 14, purchased another 1,000 shares on September 20 and sold this second lot on October 20, 1978.

The first count of the amended complaint charges that defendant Smith manipulated Friendly's stock through a series of transactions on the AMEX, that the remaining

defendants knew of the manipulation, and that by omitting to disclose the manipulation to the public the corporate and selling defendants "joined in" the market manipulation. The second count charges the selling defendants alone with liability under § 10(b) for omitting to disclose that the upward movement of Friendly's stock prices, which allegedly induced plaintiff and the other class members to buy, resulted from the manipulation of the stock.

Monthly trading volume on the AMEX for twelve of the thirteen months commencing October 1977 averaged over 40,000 shares, and for October and November 1977 and August 1978 it was over 100,000 shares. Previously from January 1974 to September 1977 the monthly trading volume had never exceeded 20,000 shares. During the same period prices had kept between $1 and $3 per share but in the class period Friendly's price peaked at $16 per share in August 1978.

According to the complaint the company's financial performance afforded scant justification for this activity. Earnings per share had been $.08 for the six months to July 1977 but were negative $.47 on the year, and were negative $.25 for the six months ending July 1978. Earnings per share had been $.16 and $.23 in 1974 and 1975 and negative $.21 in 1976.

Press releases in February and March 1978 denied the existence of unannounced corporate developments which might account for the trading activity in Friendly stock and did not disclose the alleged scheme to manipulate the stock's price. The complaint refers to no other public communications by defendants before or after plaintiff's purchases and sales; and plaintiff claims the effect of the nondisclosure continued until January 29, 1979, one week after the Wall Street Journal published a story suggesting that the stock had been manipulated.

*Discussion*

Before an action can be permitted to proceed as a class action a plaintiff must show that all four requirements of Rule 23(a) have been met, and in addition that the action comes within one of the provisions of Rule 23(b). Defendants have opposed on numerous grounds certification of the class plaintiff has proposed but, for the reasons given below, none of them suffices to defeat certification.

First, in Smith's view the class properly comprises not simply investors who purchased during the class period but those who purchased in reliance on representations made by defendants. He urges denial of certification because plaintiff has provided no basis for the court to determine that the proposed members are too numerous for individual joinder, see *DeMarco v. Edens*, 390 F.2d 836 (2d Cir. 1968); Fed.R.Civ.P., Rule 23(a)(1). With respect to this same class of purchasers, Smith further asserts that individual questions of reliance and causation will predominate over any common questions of fact or law, see Rule 23(b)(3), thus foreclosing the court from concluding that in this case "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Second, all defendants contend that any class certified should not include purchasers who sold at a price higher than their purchase price. Defendants argue that such investors have not been damaged by any acts or omissions of defendants.

Lastly, defendants challenge plaintiff's status as class representative. Smith argues that under Rule 23(a)(3) plaintiff's claim is not typical of that of absent class members because plaintiff does not allege reliance on any statement or "financial factor" of the company in making his purchases and because he is "an attorney and . . . a very sophisticated investor." Smith also contends that plaintiff has not alleged he "is unconditionally willing to finance this matter himself or capable of doing so" and therefore cannot be found to be an adequate representative of the interests of absent class members under Rule 23(a)(4). The selling defendants argue that because plaintiff both bought and sold within the class period his claim is not typical of that of potential class members who held their

Friendly stock until after the Wall Street Journal disclosure; and further, that plaintiff cannot adequately represent the interests of those class members because of conflicts which will arise in proving damages.

Smith's arguments based on issues of reliance and causation—numerosity, predominance and the typicality of plaintiff's claim—are flawed because they overlook the theory of the complaint and the law on which it is based. Plaintiff claims that all members of the class suffered loss in buying Friendly stock because the open-market price they paid allegedly had been inflated through a market manipulation and an attendant, continuing nondisclosure and none of them would have purchased the stock if defendants had disclosed that the stock was being manipulated.

 These allegations bring the complaint within the now well-established case law in this circuit which permits open-market purchasers claiming they were damaged by a fraud on the market to substitute for proof of "transaction causation"—*i. e.,* direct reliance upon specific misrepresentations or omissions in making the purchase— proof that the alleged nondisclosure was material. See generally *Ross v. A. H. Robbins Co.,* 607 F.2d 545, 553 (2d Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), citing *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 150–54, 92 S.Ct. 1456, 1470–72, 31 L.Ed.2d 741 (1972), and *Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir. 1975); *Schapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228, 238–40 (2d Cir. 1974); *Kane Associates v. Clifford,* 80 F.R.D. 402, 406–07 (E.D.N.Y.1978). It is clear that "materiality rather than reliance" has become "the decisive element of causation," *Titan Group, Inc. v. Faggen,* 513 F.2d 234, 239 (2d Cir.), *cert. denied,* 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975), since "reliance will be presumed once the plaintiffs have demonstrated at trial the materiality of the alleged nondisclosure." *In Re New York Municipal Securities Litigation,* 87 F.R.D. 872 (S.D.N.Y.1980).

The foregoing analysis demonstrates that the class properly comprises open-market purchasers who bought during the class period, without regard to whether they directly relied on representations by defendants. Discovery taken of Friendly's corporate transfer records shows some 370 institutional and 160 individual purchases during the class period. Individual joinder of all members of a class of over 530 purchasers would be impracticable. Furthermore, it is clear that as to all these purchasers the complaint's allegations of a common course of conduct affecting the price of securities traded on the open market present questions of law and fact common to all class members within Rule 23(a)(2), and which "predominate" for purposes of Rule 23(b)(3) over individual matters affecting individual class members such as damages or reliance, see, *e. g., Blackie v. Barrack, supra,* 524 F.2d at 902–08; *Green v. Wolf Corp.,* 406 F.2d 291, 299–301 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Hochschuler v. G. D. Searle & Co.,* 82 F.R.D. 339, 349 (N.D.Ill.1978).

 To the extent that individual issues of reliance may destroy the typicality of the named plaintiff's claim, *cf. e. g., Greenspan v. Brassler,* 78 F.R.D. 130 (S.D.N.Y.1978) (reliance on another's expertise, not the stock's market performance), Smith has not supported his assertion that plaintiff is so "sophisticated" an investor that his claim cannot be found to be typical, nor has he persuasively shown that a plaintiff's sophistication necessarily renders his claim atypical. *Compare Garonzik v. Shearson Hayden Stone Inc.,* 574 F.2d 1220, 1221 (7th Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 39 (1979) (denial of representative status to plaintiff who admitted his sophistication as investor not abuse of discretion), *with Feder v. Harrington,* 52 F.R.D. 178, 183–84 (S.D.N.Y.1970) (claim not rendered atypical by plaintiff's sophistication).

The selling defendants make a stronger argument against plaintiff's representative status. Focusing on the fact that plaintiff sold all his Friendly stock three months

before the class period closed, they contend that plaintiff must show defendants' acts or omissions had ceased to inflate the price of Friendly stock by the time of his last sale if he is to recover damages. Thus, defendants reason, plaintiff's claim is not typical of, but antagonistic to the claims of class members who held their stock until after the class period ended and may recover their maximum damages by proving the stock's price continued inflated until publication of the Wall Street Journal's story. Similarly defendants urge that plaintiff is an inadequate representative for purchasers who did not sell until after disclosure because he has no incentive—in fact, a disincentive—to show they were damaged.

Defendants' argument evidently rests on an assumption that the court will apply an out-of-pocket losses measure for recovery in this action. The recovery measure, however, has not yet been determined. "Two theories of damages for defrauded buyers have been used in this circuit: out of pocket losses and the difference between purchase price and subsequent resale price." *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594, 603 (2d Cir. 1978). Courts in this circuit generally have reserved the second measure, termed °alternatively "rescission damages" or "gross economic loss," see *Rolf v. Blyth Eastman Dillon & Co.*, 570 F.2d 38, 49 & n.21 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1979), for broker-fraud cases, *e. g., Clark v. John Lamula Investors, Inc., supra; Chasins v. Smith, Barney & Co.*, 438 F.2d 1167 (2d Cir. 1970); *Marbury Management Inc. v. Kohn*, 470 F.Supp. 509, 516 (S.D.N.Y.1979). The measure requires proof that the purchasers would not have purchased the stock at any price since "the evil is not the price at which [plaintiffs] bought but the fact of being induced to buy." *Chasins v. Smith, Barney & Co., supra*, 438 F.2d at 1173. The out-of-pocket measure derived from recovery in the common law action of deceit is "theoretically preferred," *Bonime v. Doyle*, 416 F.Supp. 1372, 1384 (S.D.N.Y.1976), *aff'd mem.*, 556 F.2d 554 (2d Cir. 1977), and usually applied in Rule 10b–5 market fraud cases, *e. g., Elkind v. Liggett & Myers, Inc.*, 472 F.Supp. 123, 129 (S.D.N.Y.1978).

Although rescission damages have been termed "entirely inappropriate" for Rule 10b–5 market fraud class actions, *Bonime v. Doyle, supra*, 416 F.Supp. at 1385–86, *accord, Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1341–44 (9th Cir. 1976) (Sneed, Jr., concurring) (discussing view that it is abuse of district court's discretion to certify class on assumption rescissory damages would be applied), authority also supports the view that a plaintiff is not foreclosed from arguing for application of rescission damages once the action has been certified as a class action, see *Steinberg v. Carey*, 470 F.Supp. 471, 476–77 & n.21 (S.D. N.Y.1979). In this case, the amended complaint—in particular the allegation that "[h]ad disclosure been made of defendants' fraudulent practices complained of, and that the market in Friendly shares was artificially inflated, neither the plaintiff nor other shareholders of Friendly similarly situated would have purchased Friendly shares"—permits application of either measure. Plaintiff's extensive quotation from *Blackie v. Barrack, supra*, 524 F.2d at 908–09 (Plaintiff's Reply Memorandum at 13–14), suggests the possibility he may argue for application of rescission damages.

■ The possibility that rescissory damages could be applied in this case (which would dissipate the conflicts within the class defendants have relied upon, *see Green v. Occidental Petroleum Corp., supra*, 541 F.2d at 1343) confirms that defendant's chief argument against certification overmagnifies the importance of damages issues to determining the real inquiry under Rule 23(a)(3) and (4), *viz.*, whether any conflicts between the representative's and the absent class members' interests "go to the heart of the controversy." *Gates v. Dalton*, 67 F.R.D. 621, 630 (E.D.N.Y.1975). Undeniably, issues of relief can make various interests within the class antagonistic, as when the representative plaintiff seeks to remedy a wrong when the absent class members would not want liability established, *e. g., Phillips v. Klassen*, 502 F.2d 362, 366–67 (D.C.Cir.1974) (challenged action could have

been taken as "conferring economic benefits or working economic harm, depending on the circumstances of the individual"), or when the representative holds a substantial equity interest in the defendant corporation, *Wood v. Rex-Noreco, Inc.*, 61 F.R.D. 669, 673–74 (S.D.N.Y.1973). In those situations the issue of ultimate relief raised substantial questions whether all members of the proposed class wanted liability established at all, or whether the representative could be relied on to press the absent class members' claims because of his ambivalent position.[1]

In this case, however, defendants have not suggested that any class member is not interested in having liability established; nor have they suggested that any class member would be unwilling to have this plaintiff prove defendants committed fraud by showing the stock was manipulated, that defendants had a duty to disclose this as a material fact which they did not perform, and that this nondisclosure caused the stock's price to be inflated. Defendants only raise the possibility of conflict between plaintiff and other purchasers who held their shares in the event that computation of damages becomes necessary. Even assuming that this court would apply the out-of-pocket measure of damages involving the value and price measurements for the extent of price inflation at the time of purchase as described in *Green v. Occidental Petroleum Corp., supra,* 541 F.2d at 1344–46, defendants' argument overstates the ex-

tent of the conflict acknowledged in that case. Logically, plaintiff's interest in minimizing the extent of price inflation at the time of his last sale puts him in conflict only with purchasers who bought at or after the time plaintiff sold, not all purchasers who held until disclosure as defendants contend.[2]

Even restricted in this fashion, defendants' argument about conflicts arising from proof of damages will not defeat certification. With few exceptions the courts have held that the availability of procedural devices such as subclassing, Rule 23(c)(4) and separate trials for liability and damage issues makes certification of the entire class of purchasers proper despite the potential conflict between purchasers who sell and those who hold their securities until after disclosure. *E. g., Green v. Occidental Petroleum Corp., supra,* 541 F.2d at 1344–46 (Sneed, J., concurring); *Blackie v. Barrack, supra,* 524 F.2d at 908–09; *In Re LTV Securities Litigation,* 88 F.R.D. 134, [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,605 (N.D. Tex.1980); *Greene v. Emersons, Ltd.,* 86 F.R.D. 47, 61 (S.D.N.Y.1980); *Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 173 (E.D.Pa.1979); *Tucker v. Arthur Andersen & Co.,* 67 F.R.D. 468, 481–82 (S.D.N.Y.1975); *B & B Investment Club v. Kleinert's, Inc.,* 62 F.R.D. 140, 141, 144 (E.D.Pa.1974). *Contra, DeSimone v. Industrial Bio-Test Laboratories, Inc.,* 80 F.R.D. 112, 113 (S.D.N.Y. 1978); *Feldman v. Lifton,* 64 F.R.D. 539, 549 (S.D.N.Y.1974) (ten-year class period).[3]

---

1. Defendants' contention that the claims of purchasers who sell cannot be typical of, and conflict with the interests of purchasers who hold their securities, relying on *Wood v. Rex-Noreco, supra,* has been rejected in this circuit in *Herbst v. International Telephone & Telegraph Co.,* 495 F.2d 1308, 1314 (2d Cir. 1974), where the Court observed:

 "[W]e do not perceive any conflict of interest between those who have retained their shares and those who have since sold them. The personal interest of those who still hold ITT stock in gaining more from the exchange than they did far outweighs their concern that any award could damage ITT."

2. It is also clear that if the damages measure defendants propose is used, then even purchasers who sold at a nominal profit may be includ-

ed in the class since they may have suffered damages. *See Green v. Occidental Petroleum Corp., supra,* 541 F.2d at 1346.

3. Surprisingly, despite their extensive reliance on *Robinson v. Penn Central Co.,* 58 F.R.D. 436 (S.D.N.Y.1973), and *Elkind v. Liggett & Myers, Inc.,* 66 F.R.D. 36 (S.D.N.Y.1975), defendants have not argued that because this is a nondisclosure case plaintiff cannot adequately represent those purchasers who bought after he did, as those cases hold. The rationale of these decisions is that if plaintiff fails to prove the duty to disclose arose before his purchase, he has no incentive to prove that it arose afterwards, since he could suffer no damage from fraudulent conduct occurring after his purchase. *See Elkind v. Liggett & Myers, Inc., supra,* 66 F.R.D. at 41–42; *Weiss v. Drew Na-*

In summary, plaintiff has adequately shown that the potential class members are too numerous for individual joinder to be practicable; that there are questions of law and fact common to all members of the class; that these common questions will predominate over any individual issues of damages or reliance; and that he will fairly and adequately represent the interests of the absent class members in establishing liability on the part of defendants. Any possible conflict arising from the measure of recovery actually used can be remedied through subclassing. In view of the foregoing, the court concludes that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Rule 23(b)(3).

The class is conditionally certified, Rule 23(c)(1), to include all purchasers of Friendly stock who bought on the open market between November 18, 1977 and January 29, 1979. Counsel are directed to submit to the Court for approval, within 30 days from the date hereof, a form or forms of proposed notice to be given prospective members of the class as required by Rule 23(c)(2), F.R.Civ.P.

SO ORDERED.

*tional Corp.*, 71 F.R.D. 429, 431 (S.D.N.Y.1976). The force of these decisions may have been eroded by the redefinition of the *Elkind* class in *Elkind v. Liggett & Myers*, 77 F.R.D. 708 (S.D. N.Y.1977), to include later purchasers. *See Hochschuler v. G. D. Searle & Co., supra*, 82 F.R.D. at 347–48 & n.14.