William I. WEISBERG and Philip Edell, Plaintiffs,

v.

APL CORPORATION, Harold L. Schwartz, Jr., A. Harry Fishman, Robert Hodes, Paul Krantz, Gerald Krevans, Thomas Kuhnen, Leonard Leifert, Bernard L. Schwartz, Jerome Wenig and Raymond Zager, Defendants.

Charles G. LEONHARDT, Plaintiff,

v.

Harold L. SCHWARTZ, Jr., A. Harry Fishman, Raymond Zager, Leonard Leifert, Gerald Krevans, Jerome Wenig, Bernard L. Schwartz, Robert B. Hodes, Thomas Kuhnen, Paul Krantz and APL Corporation, Defendants.

Nos. 74–C–1794 and 75–C–1759.

United States District Court,
E. D. New York.

Oct. 5, 1977.

Mordecai Rosenfeld, Gen. Counsel, New York City, for William I. Weisberg and Philip Edell.

Tenzer, Greenblatt, Fallon & Kaplan, Associate Gen. Counsel, New York City, for plaintiffs; Mordecai Rosenfeld, Edward L. Sadowsky, Mona D. Shapiro, New York City, of counsel.

Rabin & Silverman, New York City, for plaintiff Charles G. Leonhardt; I. Stephen Rabin, Donald M. Kresge, George Ainsworth, Jr., New York City, of counsel.

Willkie, Farr & Gallagher, New York City, for all defendants except Krevans; David L. Foster, Richard L. Feller, Roberta Lynn Tross, New York City, of counsel. ·

BARTELS, District Judge.

Plaintiffs Charles G. Leonhardt and William I. Weisberg and Philip Edell move this court pursuant to Fed.R.Civ.P. 23 for certification of their respective actions as class actions. *Weisberg* is the product of a prior consolidation by consent of two related cases brought in this court. Following transfer of *Leonhardt* to this court from the United States District Court for the Southern District of New York, the defendants (who are the same in both cases) moved to consolidate both actions pursuant to Fed.R. Civ.P. 42(a). The parties agreed to consolidation for pretrial purposes but left open is the question of whether there will be separate trials.

The plaintiffs allege violations of §§ 10(b), 14(e) & 27 of the Securities Exchange Act of 1934, and §§ 17(a) & 22(a) of the Securities Act of 1933, predicated on (a) the failure of the defendants to disclose a scheme to cause the price of APL securities to rise by reducing the amount of its common stock and convertible securities and by thereafter declaring dividends on the reduced amount of common stock, (b) the acquisition by defendants of APL's common stock and at the same time failing to disclose their intention to declare a dividend on such stock on December 12, 1974, and (c) defendants' positive misrepresentation that "APL does not pay cash dividends or stock dividends."

APL is a publicly held New York corporation listed on the New York Stock Exchange, with its principal place of business in Great Neck, New York. The individual defendants are all present or former members of the Board of Directors and/or officers of APL. The successive steps by which the defendants are charged with carrying out their fraudulent acts appear in chronological order as follows:

| | |
|---|---|
| February 14, 1974 | APL announces there will be an exchange offer, which plaintiffs allege to be part of a scheme to reduce outstanding common and convertible preferred stock and debentures formulated by defendants on or prior to this date. |
| May 14 to June 10, 1974 | Defendants make an offer to exchange $3,600,000 amount of debentures for 300,000 shares of common stock. |
| July and August, 1974 | APL purchases $1,245,000 of its debentures convertible into common stock on the open market. |
| September 27 to October 23, 1974 | APL makes tender offer to purchase up to 500,000 shares of its common stock at $6.50 per share and actually purchases 401,819 shares. |
| November 1974 | APL purchases 19,000 shares of it debentures convertible into common stock. On November 11, 1974, APL purchases 125,000 shares of its common stock on the New York Stock Exchange at $8.50 per share. |

| December 12, 1974 | APL announces that it will pay dividends of $1.00 annually for first time since 1963; APL declares dividend of $.25 per share. |
| February 28, 1975 | APL sends notice of redemption to all holders of Class B Preferred Stock, Series B, convertible into common shares. |
| March 10, 1975 | APL declares another dividend of $.25 per share. |
| April 1, 1975 | APL redeems all Class B Preferred Stock, Series B. |
| June 5, 1975 | APL declares another dividend of $.30 per share and also a two-for-one split of common shares. |

### Leonhardt's Claim

Leonhardt exchanged common stock for debentures during the exchange offer period of May 14–June 10, 1974. He alleges in general that the events listed above were linked together by a common scheme to buy back a substantial amount of APL common stock which should have been disclosed, and in particular, that APL had substantial reason to believe that the debentures exchanged by APL for its common stock would trade for significantly less than the $12 face value, and that they did trade for less than $12. APL stated in the exchange circular that "APL can make no assurances with respect to the market price . . . for the Debentures" and further, that "APL does not pay cash dividends or stock dividends." Leonhardt claims that these statements were false and misleading and that APL did intend to declare dividends on its stock. Accordingly, Leonhardt seeks damages and rescission. By this action he seeks to represent all sellers of APL securities except defendants and their privies from February 14, 1974, through December 31, 1974, excluding those sought to be represented by Weisberg.

### Weisberg's Claim

Weisberg's attack is focused on APL's tender offer to purchase its common stock at $6.50 per share, during September 27–October 23, 1974, at which time he tendered all 153 of his common shares and his co-plaintiff Edell tendered 7000 of his 8000 shares. Weisberg claims that the offering circular contained material omissions in that it incorporated by reference the May 14–June 10, 1974, exchange offer circular which stated that "APL does not pay cash dividends or stock dividends," and that it failed to disclose that APL's prospects had improved and that APL intended to round out its purchase of stock on the open market at a higher price if it did not acquire all of the 500,000 shares sought through the tender offer. The circular further allegedly misstated the status of the proposed sale of one of APL's subsidiaries, Rogers Wholesalers, Inc., which was completed in the middle of the tender offer on October 7, 1974, and from which APL realized $8,700,000, including cash in the amount of $5,500,500. Plaintiffs alleged that the defendants owed a fiduciary duty to all members of the proposed class to inform them of these matters. They further allege that after announcement of the dividend the stock rose from $6.50 to $9.25 per share, and that after the full impact of APL's earnings was made public, the stock sold for $22 per share on the New York Stock Exchange. Weisberg seeks damages reflecting this rise in value, and seeks to represent all persons who owned APL common stock on September 27, 1974, the first day of the tender offer, and who either tendered such stock to APL or sold it on the open market from September 27 to December 12, 1974, the date of the dividend announcement.

### Discussion

There can be no question that the criteria of numerosity, predominance of common questions and superiority necessary for certification of a class under Rule 23(b)(3) have been satisfied in both *Leonhardt* and *Weisberg*. *See, e. g., Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).[1] The only area of disa-

---

1. The defendants claim that both *Weisberg* and *Leonhardt* are inherently unfit to proceed as class actions, predicated upon the bizarre con-

tention that to permit a class action would require the court to treat all members as if they were equally misled by the misrepresentations

greement is over the typicality of the respective class claims and the adequacy of representation of all the individuals included in the proposed classes.[2] In particular, with respect to Weisberg, defendants argue that he cannot represent (a) open market sellers during the Weisberg class period, and (b) any persons who sold their shares after the end of the tender offer, and with respect to Leonhardt, defendants argue that he cannot represent (a) open market sellers; (b) sellers such as arbitrageurs who did not already own shares in APL at the beginning of the Leonhardt class period; (c) sellers of APL securities other than common stock; and (d) persons who sold prior to or after the exchange offer.[3]

*Open Market Sellers*

Section 10(b) of the Securities & Exchange Act of 1934 and Rule 10b–5 make illegal various misrepresentations, non-disclosures and other acts "in connection with the purchase or sale of any security." APL argues that Weisberg and Edell, as persons who tendered their shares to APL after receiving the tender offer circular, cannot represent stockholders who contemporaneously sold on the open market after receiving the circular, since Weisberg and Edell have no incentive to prove the "in connection with" element with respect to the open market sellers. However, Weisberg and Edell would have to prove the "in connection with" element with respect to themselves as well as with respect to open market sellers. A more pertinent question is whether the approach they would take in proving their own cases would be significantly different than that necessary to prove the open market sellers' cases.

■ Insofar as plaintiffs' cause of action rests on misrepresentation, as distinguished from non-disclosure, the "in connection with" test is so broad that as a practical matter there will be no significant difference in establishing this element for either of the two groups Weisberg and Edell seek to represent. The Second Circuit in *S.E.C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860 (2d Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), construed "in connection with" broadly, as follows:

> "Congress when it used the phrase 'in connection with the purchase or sale of any security' intended only that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities."

*Accord, Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969); 2 A.

---

and non-disclosures. Under such an approach, they argue, the court would have to consider what would have taken place had there been full disclosure: failure of the alleged scheme and a significantly smaller increase in the value of the stock. On the other hand, they claim, were shareholders to sue individually, the individual plaintiff could contend that many persons would still have exchanged or tendered despite disclosure, although he himself would not have, and therefore his particular shares would have undergone a significant increase in value.

Such an argument is unrealistic and speculative and in all events cannot defeat class representation based upon the facts alleged.

**2.** Any questions of individual reliance which may arise with respect to the misrepresentation claims cannot, under the circumstances of this case, defeat class treatment. *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d

766 (1969); *Reichert v. Bio-Medicus, Inc.*, 70 F.R.D. 71 (D.Minn.1974). There is no issue of individual reliance with respect to the non-disclosure claims. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

**3.** The defendants contend that Leonhardt, as a person who exchanged common shares for debentures, may have a stake in APL's financial stability in conflict with the stockholders who sold all their APL holdings and who are interested only in a financial recovery from APL. This is a circular argument because Leonhardt seeks rescission and/or recovery of money damages. Additionally, these debenture holdings would not give Leonhardt an equity interest in the corporation. *Compare Wood v. Rex-Noreco, Inc.*, 61 F.R.D. 669 (S.D.N.Y.1973) *with Madonick v. Denison Mines, Ltd.*, 63 F.R.D. 657 (S.D.N.Y.1974).

Bromberg, Securities Law, Fraud: SEC Rule 10b–5, § 7.6(2)(a) (1975). Non-disclosure is a different matter. In non-disclosure cases the "in connection with" element is more difficult to establish because of the difficulty in determining the specific time disclosure should have been made. This duty is frequently linked to some type of insider trading. *See id.* § 7.6(4). However, all stockholders who received the tender offer circular or the exchange offer circular would be entitled to rely on the information contained therein and assume that there was full disclosure and no omissions of material facts whether they sold to the corporation or sold ·in the open market. Consequently Weisberg and Leonhardt may represent sellers in the open market in their respective classes as hereinafter determined, whether they rely on misrepresentation, non-disclosure or both. *Cf.* Henry, *Arbitrageurs in Tender Offers*, 119 U.Pa.L. Rev. 466, 471–72 (1971) (relationship between open market trading and tendering during tender offer).

*Non-common Securities*

■ The court has ruled that Leonhardt will not be permitted to represent holders of securities other than APL common shares. It is true that in some circumstances, a trader in one type of security has been permitted to represent traders in another, *see, e. g., Handwerger v. Ginsberg,* [1974–75] Fed.Sec.L.Rep. (CCH) ¶ 94,934 (S.D.N.Y.), *app. dismissed,* 519 F.2d 1339 (2d Cir. 1975). However, we believe that Leonhardt as a common stockholder is in no position to represent non-common stock sellers because the damages to the holders of convertible and other nonconvertible securities are much more tenuous and remote and difficult of determination so that Leonhardt would have no real incentive to delve into these complications when the determination of damages to the common stock by manipulation is so much easier. Thus Leonhardt's claims are not typical of and he cannot adequately represent sellers of non-common securities.

*Non-owners of Common Stock at Initiation of Exchange Offer*

■ Defendants assert that Leonhardt, who received his circular and owned his shares prior to the commencement of his class period, cannot represent stockholders who did not own stock until after the time the circular was issued and thus after the duty to disclose had arisen, since such stockholders would have bought at a lower price and thus have suffered no or lesser damages when they sold at the allegedly artificially manipulated lower price. Defendants for this reason allege an absence of typicality. The court agrees that Leonhardt should not be permitted to represent any shareholders who did not own their shares prior to the time the duty to disclose allegedly arose. While some cases suggest that such representation might be permissible, *see, e. g., B & B Investment Club v. Kleinert's, Inc.,* 62 F.R.D. 140 (E.D.Pa.1974); *Alameda Oil Co. v. Ideal Basic Industries, Inc.,* 326 F.Supp. 98 (D.Colo.1971), these cases recognized the problem of proving damages for the trader who both bought and sold during the period of the alleged manipulation. In this case, either Leonhardt has abandoned any pretense of representing such traders, or his attorney is not interested in pressing their claims, for at no point in oral argument or in his three briefs does Leonhardt indicate how he would or could properly represent such persons. Under these circumstances, we find that in addition these traders would not be adequately represented by Leonhardt in this case. *Cf. Jacobs v. Paul Hardeman, Inc.,* 42 F.R.D. 595 (S.D.N.Y.1967) (reluctant plaintiffs cannot adequately represent post-disclosure purchasers); *Mersay v. First Republic Corp. of America,* 43 F.R.D. 465 (S.D.N.Y.1968) (vigor of attorney an element of adequacy of representation).

*Representation of Prior and Subsequent Sellers*

Weisberg and Leonhardt both raise claims of fraud through non-disclosure as well as through misrepresentation. Weisberg seeks to represent stockholders who

sold common stock subsequent to his tender, and Leonhardt seeks to represent sellers both prior to and subsequent to his own exchange. We have previously discussed the differences between non-disclosure and misrepresentation cases with respect to the application of the "in connection with" element under Rule 10b–5. Different rules have also been applied in non-disclosure and in misrepresentation cases in determining the typicality and adequacy of representation of stockholders who traded at different times than the plaintiffs.

■ Focusing first upon misrepresentations by defendants, the cases are clear that under a liberal construction of Rule 23 the named plaintiff may represent those who sold before or after his sale to the corporation provided their sales took place after the misrepresentation was made. The rationale for this conclusion is that the interests of the representative party need not be coextensive with the interests of the entire class as long as there is no conflict with the interests of the other members of the class. 3B J. Moore, Federal Practice ¶ 23.07[2]; *In Re Caesars Palace Securities Litigation*, 360 F.Supp. 366 (S.D.N.Y.1973); *Residex Corp. v. Farrow*, 20 F.R.Serv.2d 97 (E.D.Pa.1975).

■ In non-disclosure cases a more difficult problem emerges. Each case must depend upon its own peculiar facts and circumstances. Referring to prior purchasers or sellers, it would appear that a non-disclosure plaintiff would have no incentive to prove that the duty to disclose reached back to a time earlier than the date of his own purchase or sale, and thus it would be unlikely that he could satisfy the typicality requirement and adequately represent those who traded in the stock prior to his own transaction. However, if the plaintiff alleges that the defendant had a duty to disclose at a particular time prior to the plaintiff's purchase or sale, a liberal construction of Rule 23 should permit representation of prior traders. We believe that the circumstances of this case will not justify the plaintiffs' representation of persons who traded in the stock prior to the tender

offer or exchange offer, respectively, although they may represent such persons who traded in the security prior to their own respective transactions. *Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1490 n. 191 (1976). *Cf. Robinson v. Penn Central Co.*, 58 F.R.D. 436 (S.D.N.Y. 1973).

It has been held that a plaintiff in non-disclosure cases cannot adequately represent those who traded in the stock after his transaction. The rationale of these decisions seems to be that such a plaintiff would concentrate on establishing that the duty to disclose arose at the time of or prior to his transaction and accordingly he would neglect the possibility that in fact the duty to disclose arose only after his own transaction, which would automatically defeat his own claim. In this posture he could not adequately represent the subsequent traders. *Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36 (S.D.N.Y.1975); *Stull v. Baker*, [1973] Fed.Sec.L.Rep. ¶ 94,227 (CCH) (S.D.N.Y.1973); *Weiss v. Drew Nat'l Corp.*, 71 F.R.D. 429 (S.D.N.Y.1976). In *Bisgeier v. Fotomat Corp.*, 62 F.R.D. 113 (N.D.Ill.1972), a plaintiff who sued on the non-disclosure of the deteriorating relationship between defendant and its principal supplier was permitted to represent subsequent purchasers assuming a common and consistent course of conduct could be shown. *See Residex Corp. v. Farrow, supra*; *Gelman v. Westinghouse Electric Corp.*, 73 F.R.D. 60, 67 (W.D.Pa.1976); *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

Both parties in their respective complaints allege a series of events which may be characterized as misrepresentations and non-disclosures occurring before and after their respective sales. In order to determine the classes of stockholders who may be represented by Weisberg and Leonhardt in accordance with the above discussion, we must examine the complaints and the record.

#### a. *Weisberg*

■ Weisberg and Edell focus on omissions and half-truths in the tender offer circular. They seek to represent persons who sold common stock from September 27 to October 23, 1974, the period of the tender offer, as well as those who sold until December 12, 1974, the date the dividends were announced. *Cf.* 1 A. Bromberg, Securities Law, Fraud: SEC Rule 10b–5, § 6.4(4). Between the end of the tender offer on October 23 and the dividend announcement on December 12, APL purchased a large quantity of common stock and convertible debentures, at which point there arguably arose not only a renewal of the duty to disclose the information which APL should have disclosed at the time of the tender offer, but also a duty to disclose any new material information. 2 A. Bromberg, Securities Law, Fraud: SEC Rule 10b–5, § 7.4(6). If Weisberg can show that material information should have been, but was not disclosed in the tender offer circular, all persons who sold up to December 12 might well have a viable claim. If the facts indicate that a duty to disclose did not arise until after the tender offer ended on October 23, those who sold thereafter might nevertheless have a viable claim, but, it is argued, Weisberg would have no motivation to prosecute. It appears to the court that the interests of all persons who sold or tendered between September 27 and December 12, 1974, are so similar that they would satisfy the requirement of typicality. It would be improper to exclude the post-tender offer sellers because of speculation that Weisberg might ignore a theory upon which the post-tender offer sellers might recover.

#### b. *Leonhardt*

■ As noted above, Leonhardt's claim against defendants is broader than Weisberg's, and is based upon a general plan by the defendants to raise the value of APL stock by reducing its quantity and declaring dividends. He seeks to ´represent persons who traded in the corporation's securities between February 14, 1974, the date of the announcement of the proposed exchange offer, and December 31, 1974, excluding the class represented by Weisberg. It must be remembered that the actual exchange offer was not made until May 14, 1974. To show that any duty to disclose arose prior to May 14 is not necessary to Leonhardt's case and there is no market event other than the mere announcement of the exchange offer on February 14 upon which Leonhardt can base any claim of a duty to disclose. The proof of a duty to disclose on the date of the announcement appears to be more difficult, if at all possible, than the proof necessary to establish such a duty on May 14. In view of the difficulty of establishing that a duty to disclose arose on February 14 and Leonhardt's lack of motive to do so, we do not believe that he could adequately represent sellers from February 14 up to May 14.

We now proceed to Leonhardt's claim to represent sellers of APL stock from December 13 to December 31, 1974. Here again, Leonhardt would have much more difficulty in proving fraud or misconduct than he would have with respect to those who sold before the dividend announcement,[4] and again he would have no motivation to adequately represent these stockholders. Leonhardt argues that the class continues until the non-disclosure is corrected, but for the reasons stated above we believe that the change in circumstance here makes Leonhardt an atypical and inadequate representative of the post-December 12 sellers.

The exchange offer was made on May 14 and ended on June 10. Weisberg represents stockholders from September 27 to December 12. This leaves open the period from June 11 to September 26, during which sales and purchases were made. We find no difficulty in permitting Leonhardt to represent stockholders during this period, for the events set out then appear to derive from a common and consistent course of conduct which should be presented in one case.

---

4. The dividend announcement of December 12 was the event which aroused the suspicion of Weisberg, at least, who filed his suit on December 19, 1974, one week later.

*Conclusion*

In conclusion, the court finds that the complaints and record support a finding of numerosity, commonality, typicality, adequacy of representation, common questions of law or fact predominating over any questions affecting only individual members, and that the class action is superior over other available methods for the fair and efficient adjudication of this controversy, and hereby certifies the following classes:

1. The class in *Weisberg* will consist of all persons, except defendants and their privies, who owned APL common stock on September 27, 1974, and who either sold on the open market or tendered to APL Corporation any such shares between September 27 and December 12, 1974, inclusive.

2. The class in *Leonhardt* will consist of all persons, except defendants and their privies, who owned APL common stock as of May 14, 1974, and who either exchanged it for APL debentures or sold the stock on the open market between May 14 and September 26, 1974, inclusive.

The court reserves the power to alter or amend any aspect of the certification order or discontinue class action status should later circumstances so warrant.

SO ORDERED.