Stephen HOCHSCHULER and Isidore L. Gordon

v.

G. D. SEARLE & CO., Daniel C. Searle, William L. Searle, Wesley M. Dixon, Jr., James A. Buzard and Robert McConnell.

No. 75 C 4182.

United States District Court, N. D. Illinois, E. D.

Dec. 29, 1978.

Sachnoff, Schrager, Jones & Weaver, Ltd., Chicago, Ill., for plaintiffs.

Sidley & Austin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

The instant complaint is before the court on plaintiffs' motion for provisional class certification. Fed.R.Civ.P. 23(c). Plaintiffs allege violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and rule 10b–5, promulgated thereunder, 17 C.F.R. § 240.10b–5. Plaintiffs are purchasers of G. D. Searle & Co. common stock. The gravamen of plaintiffs' complaint is that defendants failed to disclose that three drugs which defendants manufacture had carcinogenic qualities and that while defendants entertained doubts about the marketability and safety of these drugs, they made false material declarations concerning them.[1] For the reasons stated below, the court grants plaintiffs' motion and certifies a provisional class.

---

1. On June 10, 1977, the court granted plaintiffs' motion to dismiss count II. Accordingly, the arguments concerning count II in the briefs will not be addressed herein. At the same time, leave was granted to plaintiffs to amend their definition of the alleged class sought to be represented with respect to count I.

Solely for the purpose of this motion, the court takes the following substantive allegations of the complaint as true.[2] Defendants had knowledge of the carcinogenic properties of the three drugs, Flagyl, Aldactone and Aldactazide, by March 21, 1973. Since as early as 1960, defendants entertained serious doubts as to the safety of Aldactazide and Aldactone.[3] They authorized toxicity studies which indicated that Aldactone may have been carcinogenic. Defendants designed toxicity tests to minimize the possibility of finding that the drugs caused tumors in test animals. They also altered certain test data to conceal these properties. On March 21, 1973 defendants received a 78-week study conducted by a pathologist, Dr. Jacqueline Mauro, which concluded that both drugs had significant carcinogenic properties. Mauro's conclusions were later confirmed by another study. With respect to Flagyl, defendants first became aware that the drug had significant carcinogenic properties as early as 1972.[4] A study of the drug by two University of Nebraska doctors, Rustia and Shubek, in 1971 found Flagyl to be a carcinogen.[5] Two earlier studies, one conducted under Searle sponsorship, indicated the drug had such properties.

The possible dangers of these drugs were publicly disclosed at various times from 1972 to 1975. The Rustia-Shubek study of Flagyl was published in the Journal of the National Cancer Institute in March, 1972. During 1974, a private citizens' group, the Health Research Group, petitioned the Federal Drug Administration [FDA] to withdraw its approval of Flagyl.[6] Beginning in January, 1973, at the behest of the FDA, Searle included in its labelling of Flagyl the results of the testing indicating the drug's association with both malignant and nonmalignant tumors. This label was also published in the *Physicians Desk Reference.* On May 30, 1975, the FDA caused to be published in the Federal Register references to the conclusions of the Mauro study. A June 3, 1975 *New York Times* article expressly referred to these conclusions as reasons for decline in the Searle stock. This article does not state that Flagyl, Aldactone and Aldactazide were carcinogenic. A *Wall Street Journal* article which appeared on the same day makes reference to the Mauro study and a proposed FDA investigation as a reason for heavy trading in the stock. A July 11, 1975 *Wall Street Journal* article disclosed the possible carcinogenic properties of the drugs and the FDA accusation that Searle destroyed, altered and withheld research data.

Plaintiff Hochschuler, a Dallas physician, purchased 200 shares of Searle common stock June 3, 1975. He purchased in joint tenancy with his wife. At the time of his purchase, he had been informed by his broker that the price of the stock was depressed because of reports of the adverse studies. Plaintiff Gordon purchased 300 shares of Searle stock June 7, 1973. Gordon purchased pursuant to a "put" option agreement.[7] He sold the option April 3, 1973.

In sum, plaintiffs allege defendants participated in a scheme to artificially inflate the price of Searle common stock. Plaintiffs contend that at a time when doubt existed as to the safety of these drugs, the defendants chose to emphasize their safety and their importance to the continued prof-

2. *See Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

3. These drugs are related anti-hypertensive preparations.

4. Flagyl is an oral therapeutic used in the treatment of vaginitus.

5. The conclusions of this study were reported to the FDA in 1971.

6. The petition was denied October 21, 1975.

7. *See* L. Rosen, How to Trade Put and Call Options 109 (1974):

A put is an option which gives its owner (the buyer) the right to require the seller (writer) of the put to purchase a particular stock at a fixed price during the option period. The put contract is a negotiable contract, bearing the endorsement of a member firm of the New York Stock Exchange. It is made out in bearer form and can be resold by one person to another.

itability of Searle. Plaintiffs further argue that defendants, in spite of their doubts, emphasized the drugs' acceptance in the medical community in certain annual reports and other financial statements. Additionally, plaintiffs allege defendants failed to disclose the following: the destruction or alteration of test data in order to conceal the carcinogenic and tumorgenic qualities of the drugs; the concealment of certain flaws in the testing procedures; the filing of summary reports to the FDA which were inconsistent with raw test data.

Plaintiffs seek to represent a class of all persons who purchased G. D. Searle common stock from March 21, 1973 to July 10, 1975 and who did not sell their stock during the period. Defendants maintain a number of obstacles bar certification of the proposed class. They contend the motion must be denied because plaintiffs' claim does not meet the typicality and adequacy of representation requirements of rule 23(a). They further argue that certification is inappropriate because the class contains antagonistic members. Finally, defendants argue plaintiffs have failed to show common issues predominate under rule 23(b)(3).

After a brief review of certain threshold principles, the court will consider whether plaintiffs have met the prerequisites of rule 23(a) and then consider whether the issues of law and fact predominate and the class action is a superior mode of adjudicating the lawsuit under rule 23(b)(3).

■ Plaintiffs seek certification of a class under rule 23(b)(3). In making the class determination in a securities case, the court recognizes that the requirements of rule 23 must be liberally construed and that the rule's policy is to favor class actions. *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20 (7th Cir. 1975); *Helfand v. Cenco, Inc.*, 80 F.R.D. 1 (N.D.Ill.1977); *Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391 (E.D.Pa.1977). Consequently, the court does not deny the class motion because of the existence of minor deviations in the class and the court "should indulge every presumption to maintain this suit as a class action." *Appleton Electric Co. v. Ad-* *vance-United Expressways*, 494 F.2d 126, 137 (7th Cir. 1974). This liberal policy is based upon the belief that class actions can deter corporate wrongdoing and encourage legally mandated disclosures. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968). The class action aids small individual claimants who would otherwise be reluctant to bring their claims due to the expense of the litigation. *Hawaii v. Standard Oil*, 405 U.S. 251, 266, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).

■ Nothing stated above should be construed to suggest the defendants shoulder a burden to demonstrate the absence of a class. The burden of demonstrating compliance with rule 23 is on the plaintiff. *Amswiss International Corp. v. Heublein, Inc.*, 69 F.R.D. 663 (N.D.Ga.1975). However, in making the certification decision, the court makes no inquiry into the merits of suit. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The court will therefore first consider whether plaintiffs have complied with the prerequisites under rule 23(a) and then make the independent consideration of whether there has been compliance under rule 23(b)(3).

## I Numerosity

The proposed class plainly meets the first requirement that its membership is so numerous that joinder is impracticable. The proposed class members are alleged to number over 1000 and to be geographically diverse, living throughout the United States and abroad. *See generally* 3B Moore's Federal Practice ¶ 56.07, at 23–273 (2d ed. 1978) (a number exceeding 1000 is obviously sufficient). *See, e. g., Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (class of forty).

## II Commonality

■ Under subsection (a)(2) of the rule, plaintiffs must demonstrate that common questions of law or fact are held by all members of the class. The instant action

alleges a common scheme of nondisclosure beginning sometime before 1972 and continuing until July 11, 1975. Where the same scheme operates on a class of open market purchasers over an extended length of time, the requisite of subsection (a)(2) has been met. *See Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295 (D.Md.1977); *Kaufman v. Lawrence*, 76 F.R.D. 397 (S.D.N.Y.1977). Here, the class members are bound by the existence, nature and materiality of the misleading statements and omissions. This view was expressed in *Blackie v. Barrack*, 524 F.2d at 902:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions and that the issue may be profitably tried in one suit.

### III Typicality

██ Defendants contend that neither of the plaintiffs can represent the class because their claims are not typical. For a claim to be typical under rule 23(a)(3), plaintiffs must demonstrate that a course of conduct by the defendants exists which presents substantial questions common to all members of the class notwithstanding the existence of some conflict of interest. Thus, plaintiffs meet this requirement when they show that the same allegedly unlawful conduct affected the named plaintiffs and the class members. "Factual variations are not fatal to a proposed class when the claims arise out of the same reme-

dial and legal theory." *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 488 (N.D.Cal. 1978); *Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391, 395 (E.D.Pa.1977). Professor Moore states a two-part test for typicality: 1) the interest of the plaintiff and the class he seeks to represent are not antagonistic; 2) there is a common nucleus of operative fact in plaintiff's claim and the claim he seeks to represent. 3B Moore's Federal Practice ¶ 23.06–2 (2d ed. 1977). *See, e. g., Sullivan v. Chase Investment Services*, 79 F.R.D. 246, 257–58 (N.D.Cal. 1978); *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 488–90 (N.D.Cal.1978); *Greenspan v. Brassler*, 78 F.R.D. 130, 131–33 (S.D. N.Y.1978); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 301–02 (D.Md. 1977). Both plaintiffs have alleged they are victims of the same scheme of nondisclosure and misrepresentation concerning the three drugs. To that extent, they have met the typicality requirement.

██ The defendants contend, however, that both plaintiffs' claims are not typical because they are subject to unique defenses. The court will initially address the arguments against Hochschuler. As to him, three contentions are raised: that he made his purchase with knowledge of the nondisclosed facts; that because of his knowledge he will minimize the importance of the facts known to him in order to maximize his own recovery; that he failed to join his wife, a co-owner of the stock, as a party.[8]

Pointing to certain statements Hochschuler made in his deposition, defendants contend he purchased his stock with actual knowledge of certain facts the complaint alleges to be nondisclosed. Consequently, his claim is argued to be atypical by virtue of this unique defense. Citing *Koos v. First National Bank of Peoria*, 496 F.2d 1162,

---

8. Defendants also claim that Hochschuler's reliance on oral statements from his broker as opposed to written statements to other class members renders his claim atypical. This argument is without merit principally because, as noted above, minor factual deviations in the representative's claim do not render a claim atypical. *See, e. g., Victorian Investors v. Re-* *sponsive Environments Corp.*, 16 Fed.R.Serv.2d 1297, 1300 (S.D.N.Y.1972) (where representatives purchased "through a broker who had independent information in addition to the public statements" of defendant). *But cf. Greenspan v. Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y. 1978).

1164 (7th Cir. 1974), defendants assert Hochschuler is not a proper class representative because the issue of his knowledge is "an arguable defense unique to the named plaintiff or small subclass." *See also Zenith Labs, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508 (3d Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Greenspan v. Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y.1978) ("the putative representative is subject to unique defenses that will unnecessarily prejudice the class's probability of success"). The court finds defendants' argument unpersuasive on two grounds. First, Hochschuler's statement reflects only a minimal awareness of the FDA investigation, even accepting the construction defendants would apply to it.[9] As the court reads his statement in relation to the alleged fraud, it is unclear that Hochschuler had any knowledge whatever of any scheme. The question of his actual knowledge is more appropriately deferred to the trial of the action. Second, the question of Hochschuler's knowledge merely raises an issue of reliance which is indisputedly applicable to the entire class membership.

In reaching this conclusion, the court finds *Koos* distinguishable. The plaintiffs in *Koos* moved to represent a class of individuals who were borrowers of allegedly usurious loans. The court of appeals affirmed the dismissal of the case and the denial of the class action on the ground that the named plaintiffs did not fall within the Illinois usury statute under which they brought their claim. They therefore could not represent borrowers whose loans did in fact fall within the scope of the law. Two recent cases in which the court was confronted with an issue analogous to the one

at bar certified the class, distinguishing *Koos*. In *Hurwitz v. R. B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo.1977), plaintiffs brought an action in part under rule 10b–5 alleging certain corporate officers made misleading statements in connection with a tender offer. Defendants argued that plaintiffs' claim was atypical on the ground that plaintiffs had not relied on the allegedly false statements and omissions in the offering circular. The court certified the class, noting that a determination of reliance was better left for the merits of the case. Distinguishing *Koos*, the court noted that there was in fact nothing unique about a defense of lack of reliance since that question was applicable to the entire class. Similarly, in *Kesler v. Hynes & Howes Real Estate, Inc.*, 66 F.R.D. 43 (S.D.Iowa 1975), a nondisclosure case brought under rule 10b–5, plaintiffs disclosed in their depositions that they had either not received certain prospectuses which contained misleading information or, having received them, they failed to read them or having read them, they did not understand them. The court certified the class. It noted that "to deny class certification based upon a fine-line assessment of reliance in terms of each plaintiff's respective situation would constitute too much of an excursion into the merits of the case." *Id.* at 48. In distinguishing *Koos*, the court stated:

Here there is no question that each of the named plaintiffs was a party to a security transaction falling within the scope of the 1933 and 1934 Acts. If a live issue existed as to whether the plaintiffs had purchased "securities" from the defendants, *see, e. g., Miller v. Central*

---

9. The statement recounting a conversation between Hochschuler and his broker on June 3, 1975 reads as follows:

A. He told me he was interested in buying G. D. Searle, 200 shares at about $22.00 a share. If I remember this verbatim, no. He generally tells me—he told me it was a double A or triple A company, I guess and it was strong in the pharmaceutical field. He said presently the stock was under valued, and they had a problem with one of their drugs, Aldactazide, and that from what he had heard, as I recall, his mentioning something

about the F.D.A. was investigating because of experimenting with rats and carcigenic [sic] problems; and that was it; and he thought that the stock was under valued because of that.

(Hochschuler dep. at 22). Defendants argue that Hochschuler was aware of testing indicating an association of malignant and non-malignant tumors of Flagyl by virtue of publication of Flagyl labelling in the Physicians Desk Reference. Such information appears to have been published there prior to June 3, 1975.

*Chinchilla Group, Inc.*, 494 F.2d 414 (8th Cir. 1974), *Koos* might apply. Its principles do not control this fact situation, however. Here, unlike *Koos*, reliance will be pertinent to the claims of all plaintiffs. *Id,* at 49 n. 1.

At this juncture, the extent of Hochschuler's knowledge is hotly contested. His deposition testimony is ambiguous. There is virtually no showing of *any* knowledge of a problem with Flagyl. The *New York Times* article does not report that defendants conceived and implemented a scheme of nondisclosure beginning in 1972. The court therefore cannot conclude at this point that the question of his knowledge will become a major focus of the litigation. In the event that it does so, the court is impowered to decertify the class or designate appropriate subclasses.[10]

Defendants further contend that Hochschuler's claim is atypical because he purchased the stock jointly with his wife. Defendants' cite no authority for the proposition that the absence of Mrs. Hochschuler as a named representative renders his claim, as a joint owner, atypical. Professor Moore notes that "when persons who are needed for a just adjudication under Rule 19 are so numerous that joinder of all is impracticable then a class action is warranted, and a proper representative or representatives may sue or be sued on behalf of the class." 3A Moore's Federal Practice, ¶ 19.21, at 19–362–363 (2d ed. 1977). The fact that Hochschuler chose to purchase as a co-owner with his wife in no way suggests that his investment decision is any different than that of a person who purchases alone. In either case, the person would be influenced by the same material nondisclosures. Further, there is no showing that Hochschuler by virtue of his status has an antagonistic interest to the class.[11]

Defendants raise two principal contentions concerning the typicality of Gordon's claim. First, defendants argue that the unique nature of the form of Gordon's purchase renders his claim atypical. Second, they contend his claim is atypical because the majority of the alleged misrepresentations and omissions occurred subsequent to the date of Gordon's stock acquisition. The court views both claims to be without merit and finds his claim to be typical.

On April 3, 1973 Gordon sold a "put" option on G. D. Searle common stock.[12] On June 7, 1973 the stock was put to Gordon and pursuant to his contract, he purchased 100 shares of stock. Defendants contend this mode of purchase rendered his claim atypical because the actual stock acquisition was involuntary and because the sale of a put is a highly distinct investment decision from a purchase of a security. The fact that the ultimate acquisition of the

---

**10.** In reaching this conclusion, the court is supported by the rule itself which states the requirement is met if "the claims *or* defenses of the representative parties are typical of the claims *or* defenses of the class." (emphasis supplied). It has been held that the existence of a unique defense does not invariably render a case atypical. *See generally Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972). The reason for this is that a defense affecting the named plaintiffs' right to recover does not necessarily affect the presentation of the case on the liability issues for the plaintiff class. In this court's view, only where the defense consumes the merits of the case should the court deny certification. In a related area, the court in *Gerstle v. Continental Airlines, Inc.*, 50 F.R.D. 213 (D.Colo.1970) noted:

It is difficult to see, as defendant claims, how the fact that plaintiff faces defenses peculiar to herself would detract from her ability to adequately represent the class. Plaintiff still must establish her case and that of the class, and the Court retains supervisory powers over the conduct of the litigation so that plaintiff's perseverance can be insured. To say that plaintiff is not an adequate representative simply because her claim is not identical with that of all other class members is to require, in any class action, that the claims of each member of the class be absolutely identical. The rule does not require this much.

**11.** Additionally, the court notes that trustee status is insufficient to bar approval as class representative. *See Greenspan v. Brassler*, 78 F.R.D. 130, 131 n. 3 (S.D.N.Y.1978); *State Teachers Retirement Bd. v. Fluor Corp.*, 73 F.R.D. 569, 571–72 (S.D.N.Y.1976); *Seiden v. Nicholson*, 69 F.R.D. 681, 689 (N.D.Ill.1976).

**12.** For a definition of a put option, *see* note 7 supra.

stock was involuntary is immaterial to the requirement. "[D]ifferences in the amount of damage, the size or manner of purchase, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases." Newberg, *Class Actions* § 8816, at 850 (1977) [hereinafter cited as *Newburg*]. Gordon sold the put voluntarily, allegedly ignorant of the alleged scheme. At the relevant sale date, his decision was voluntary. The fact that the sale of a put involves different considerations does not render Gordon's claim atypical. The put option seller must prove the same case as the common stock purchaser would. *Cf. Clark v. Cameron-Brown Co.*, 72 F.R.D. 48, 53 (M.D.N.C.1976) ("shareholders and warrant holders . . . share a complete identity of interest in establishing the allegations of the amended complaint. . . No apparent antagonisms have arisen from the respective claims of the shareholders and warrant holders"). *See also Handwerger v. Ginsburg*, CCH Fed. Sec.L.Rep. ¶ 94,934 (S.D.N.Y.), *appeal dismissed*, 519 F.2d 1339 (2d Cir. 1975); *Fischer v. Kletz*, 41 F.R.D. 377 (S.D.N.Y.1966). *But see Weisberg v. APL Corp.*, 76 F.R.D. 233 (E.D.N.Y. 1977). Focusing on the commonality of interest with respect to the allegations of the complaint, it is apparent that his claim is typical.[13]

Defendants further contend that Gordon's interest is atypical because of the date of his purchase. Defendants argue Gordon has no motivation to prove any nondisclosures after the date of his purchase in June, 1973. The date of Gordon's purchase does not render his claim atypical. Defendants' argument on this point appears to be premised on the fact that *if* Gordon fails to prove his case he will not be motivated to prove fraud after the date of his purchase. The complaint alleges a common course of conduct conceived long prior to his purchase and continued long after. Taking that allegation as true, as the court is required to at this point in the litigation, plaintiff will be able to show he was injured by the common scheme which injured subsequent purchasers. In such a situation, the overwhelming weight of authority holds a plaintiff may represent subsequent purchasers. *Elkind v. Liggett & Myers, Inc.*, 77 F.R.D. 708, 712 (S.D.N.Y.1977) so held:

This case is more akin to those which have allowed the plaintiff to represent those who purchased shares after he had on the ground that, in alleging a common course of conduct over a long period of time, the plaintiff would have sufficient incentive to duly develop facts which occurred after the individual plaintiff had purchased his shares.

*See also Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295 (D.Md.1977); *Clark v. Cameron-Brown Co.*, 72 F.R.D. 48 (M.D.N.C. 1976); *Weiss v. Drew National Corp.*, 71 F.R.D. 429 (S.D.N.Y.1976); *Byrnes v. IDS Realty*, 70 F.R.D. 608 (D.Minn.1976); *Tucker v. Arthur Andersen & Co.*, 67 F.R.D. 468 (S.D.N.Y.1975); *Aboudi v. Daroff*, 65 F.R.D. 388 (S.D.N.Y.1974); *Bisgeier v. Fotomat Corp.*, 62 F.R.D. 113 (N.D.Ill.1972); *Siegel v. Realty Equities Corp.*, 54 F.R.D. 420 (S.D.N.Y.1972); *Weiss v. Tenney*, 47 F.R.D. 283 (S.D.N.Y.1969).[14] The court ac-

---

13. In so ruling, the court notes that "[i]t would be anomalous to require under rule 23(a)(3) that plaintiffs show that their claims are identical on every issue to those of other members of the class, since rule 23(b)(3) specifically allows class action treatment where the court finds that common issues 'predominate' ". *Fogel v. Wolfgang*, 47 F.R.D. 213, 216–17 (S.D.N.Y. 1969).

14. Defendants cite three cases supporting the proposition that plaintiffs cannot represent subsequent purchasers. *See Fruchthandler v. Blakely*, 73 F.R.D. 318 (S.D.N.Y.1976); *Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36 (S.D.N.Y.

1975); *Stull v. Baker*, 1973 Transfer Binder Fed.Sec.L.Reptr. § 94,337 (S.D.N.Y.1973). These cases are distinguishable or have been criticized. In *Elkind*, the class was subsequently certified. *See Elkind v. Liggett & Myers, Inc.*, 77 F.R.D. 708, 712 (S.D.N.Y.1977). *Fruchthandler* is factually distinguishable. There, the plaintiff sought to represent subsequent purchasers after partial disclosure of the fraud. Gordon here seeks to represent purchasers prior to disclosure. *See Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 301–02 n. 8 (D.Md.1977). *Stull* has been specifically criticized. *See* Newberg, Class Actions § 8818b, at 870–71 (1977). Finally, the court notes:

cordingly finds that at this time Gordon's claim meets the typicality requirement.

## IV Adequacy of Representation

 In general, the adequacy of representation requirement of rule 23(a)(4) is met where the interests of the representative coincide with the other class members and where plaintiff and his attorney will vigorously prosecute the action. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *Sullivan v. Chase Investment Services*, 79 F.R.D. 246 (N.D.Cal.1978); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295 (D.Md.1977). *See also* Newburg § 8818b. The class representative is only qualified if his interest in proving his claim will lead him to prove the claims of the remainder of his class. *Mersay v. First Republic Corp.*, 43 F.R.D. 465 (S.D.N.Y.1968). Both plaintiffs clearly meet these requisites. Defendants do not challenge the adequacy of the representation of plaintiffs' counsel.[15]

 Defendants argue that plaintiffs cannot adequately represent the class because they have interests antagonistic to the other members of the class. Defendants raise one claim as to Hochschuler: the fact that he was in possession of the information at the time he purchased the stock would render his representation inadequate and he will consequently attempt to minimize facts known to him. The simple response to this contention is that there is no proof at this juncture that Hochschuler was aware of any aspect of the fraud. Consequently, since the authorities have uniformly held that the representation can represent prior purchasers, Hochschuler is an adequate representative.[16] Defendants claim Gordon will not be motivated to prove nondisclosures subsequent to his purchase. As the court noted in the section on typicality, a prior purchaser has an interest in proving subsequent acts where a "common thread" or "essential continuity of omissions" exists. Since the adequacy of plaintiffs' counsel is not at issue,[17] both plaintiffs meet the requisites of rule 23(a)(4).

## V Predominance and Superiority

### i Predominance

 Finally, in order for this matter to proceed as a class action, the plaintiffs must show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). In making this determination the threshold question that the court must consider is whether the group for which certification is sought

---

Defendants in securities class actions have often argued that a plaintiff's claim cannot by typical of the claims of class members who purchased at different times in reliance on different documents. It is now settled, however, that the claims of such a plaintiff are typical of the claims of the class of all documents relied on are part of a common scheme to defraud.
Newberg, Class Actions, § 8816, at 851–52 (1977).

**15.** Defendants challenge the adequacy of plaintiffs' representation on the additional ground that they are not prepared to pay the cost of notice. It is well settled that inability or unwillingness to bear the cost of notice to class members would render the representation inadequate. *See, e.g., Tomkin v. Kaysen*, 69 F.R.D. 541 (S.D.N.Y.1976). Plaintiffs stated in their depositions they are prepared to pay a total of $17,000 in costs. Defendants aver that such a figure is insufficient. The court need not decide the question at this juncture. In the event that such a figure is insufficient to pay for notice and no other funds are available, the court may dissolve the class. For the present, plaintiffs' statement in their depositions that they are prepared to pay the cost of notice is sufficient.

**16.** *See, e.g., Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

**17.** Plaintiffs' counsel, experienced as they are in the area of litigation, are clearly adequate. Defendants also contend that Gordon is an inadequate representative because he traded in the stock. Sellers have been held to be adequate representatives for holders of such securities. *See Herbst v. Able*, 47 F.R.D. 11 (S.D.N.Y.1969); *Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y.1968). Gordon is therefore not rendered an inadequate representative by virtue of his trading.

seeks to remedy a common legal grievance. 3B Moore's Federal Practice § 23.45[a], at 23–322 (2d ed. 1978). "The common issues need not be dispositive of the entire litigation. The fact that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not dictate the conclusions that a class action is not permissible." *Dolgow v. Anderson*, 43 F.R.D. 472, 490 (E.D.N.Y.1968). Plaintiffs' allegations plainly meet the test here.

■■■ Defendants first contend that the statements plaintiffs allege were misleading were in fact accurate factual descriptions of past achievements which created false "impressions" with respect to future developments. They contend individual issues of what each class member's false impression was are consequently raised. Such an argument wholly misapprehends the nature of plaintiffs' claim. The claim is based on defendants' alleged concerted effort to conceal the carcinogenicity of the three drugs. Whether this scheme existed is a question touching the claim of the entire class. As plaintiffs correctly point out, whether the statements were made knowingly to conceal these facts will present a common issue. Where a common nucleus of fraud within several representations or omissions is alleged, the predominance question has been met. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295 (D.Md. 1977); *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D.Pa.1977); *Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y.1968). Here common questions predominate as to whether defendants disseminated misleading statements or material omissions, whether they artificially inflated the market price and whether defendants violated the applicable sections with respect to the class.

■■■ Defendants next contend that issues of materiality and scienter raise individual issues which predominate over the common questions. They argue that since the facts relevant to a particular stock purchaser's claim are only those facts existing at or near the time of that individual sale the question of materiality necessarily presents individual issues. The court does not view this argument as compelling. First, it ignores the allegations that defendants concealed material facts throughout the class period. Second, as plaintiffs note, materiality "is measured in terms of market impact, and does not vary among similarly situated investors." *See In re Equity Funding*, No. M.D.L. 142, at 16 (C.D.Cal. March 26, 1976) & cases cited therein. Further, "fluctuating market conditions during the proposed class period do not prevent certification of [the] class." *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 306 (D.Md.1977). Defendants do not allege that there was significant variation during the class period. *Cf. Sullivan v. Chase Investment Services*, 79 F.R.D. 246 (N.D.Cal. 1978). Defendants place great reliance on *Gelman v. Westinghouse Electric Corp.*, 73 F.R.D. 60 (W.D.Pa.1976). *Gelman* is distinguishable. *Gelman* involved a developing factual pattern whereas a concerted scheme of nondisclosure, conceived prior to the class period, is alleged here. The court specifically noted that no such scheme had been alleged and that plaintiff's claims were "based not on a single or substantially constant misdeed, but rather on a changing fluctuating series of alleged events." *Id.* at 67.

Finally, defendants' argument that individual questions of reliance and damage defeat a finding of predominance is clearly without merit. Proof of individual reliance is not required in a nondisclosure case. *Blackie v. Barrack*, 524 F.2d at 905–08; *Green v. Wolf Corporation*, 406 F.2d at 301; *Lewis v. Capital Mortgage Investments*, 78 F.R.D. at 307–09; *In re Memorex Securities Cases*, 61 F.R.D. 88, 101 (N.D.Cal.1973). Further, individual damage questions do not prevent class certification. *Blackie v. Barrack*, 524 F.2d at 905; *Lewis v. Capital Mortgage Investments*, 78 F.R.D. at 306; *Dolgow v. Anderson*, 43 F.R.D. at 490.

ii Superiority

In light of the above and considering the criteria articulated in rule 23(b)(3),[18] it is clear that a class action is a superior mode of conducting this suit. The substantial number of possible claimants renders joinder, intervention and test case impracticable. The class members do not appear to have a special interest in controlling the suit and the court is unaware of any other pending actions.

 Accordingly, for the reasons stated above, the court will provisionally certify a class of all persons who purchased G. D. Searle common stock from March 21, 1973 to July 10, 1975 and who did not sell their stock during the period. In so doing, the court notes that it is empowered at any time subsequent to the initial certification to amend or dissolve the class based upon facts which later develop. *See, e.g., Elkind v. Liggitt & Myers, Inc.*, 77 F.R.D. 708, 710 (S.D.N.Y.1977).

It is so ordered.

---

**18.** "The matters pertinent to the findings [of superiority] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."